NOT DESIGNATED FOR PUBLICATION

No. 116,499

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CLETE ADAM HARGIS,
*Appellant*.


MEMORANDUM OPINION

Appeal from Sedgwick District Court; WARREN M. WILBERT, judge. Opinion filed October 27, 2017. Affirmed.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BRUNS, P.J., MCANANY, J., and HEBERT, S.J.

PER CURIAM: Clete Adam Hargis appeals from his conviction by a jury of one count of making a criminal threat. He argues that the district court erred in denying his pretrial motion to exclude evidence pursuant to K.S.A. 2016 Supp. 60-455. We find no error and affirm the conviction.

*Factual and Procedural Background*

Hargis was charged by the State with a single count of making a criminal threat based on an incident which occurred on the evening of August 30, 2015.

1

Around 6 p.m. on August 30, 2015, Wichita Police Officer Shawn Thompson responded to a call from a local K-Mart relating to a concern about an individual inside the store who had been asked to leave. Thompson made contact with this individual, identified as Hargis, in the store parking lot. Hargis was wearing overalls with no shirt and had a red robe or blanket nearby. He was kneeling down while mumbling to himself and writing on a large piece of poster board. His arms and face appeared to be covered in red marker, similar to the one he was using to write on the poster board. Thompson observed that the poster board had something written on it about abolishing electronic laws and saw that Hargis had some tiki torches that were taped together in the shape of a cross. When Thompson asked Hargis what he meant by electronic laws, Hargis stated that he was "having some issues with the devil inside the walks on the intersections and he wanted those abolished." Hargis also stated that he was going to visit his daughter somewhere on South Hydraulic Street. After Thompson advised that the K-Mart staff did not want him on the property, Hargis indicated his understanding and left without incident.

Later that evening, Anthony Stewart and his son were working on a truck in the driveway of their house on 54th Street when Hargis walked onto the property and said that he was looking for a girl named Courtney and a little girl named Kya. Stewart did not know Hargis and was uncomfortable with his appearance and demeanor. Stewart realized that Hargis was referring to a woman and her daughter who had lived at the house before Stewart bought it. Hargis claimed that Kya was his daughter, but Stewart had been told not to give out any information about Courtney and Kya for safety reasons, so he told Hargis that he did not know them and that they were not there. Hargis then began to ramble about government brainwashing through nanotechnology in earbuds and internet radio and also commented that he was a "known child molester." Stewart directed Hargis to leave the property, but Hargis insisted that Stewart was lying about Courtney and Kya and tried to walk onto Stewart's porch.

Hearing the commotion, Stewart's wife and 13-year-old daughter came outside onto the porch. Stewart stated that he was able to direct Hargis back to the curb, where Hargis continued to insist that Stewart knew Courtney and Kya while placing his hands behind his back and stating, "[Y]ou know you want to hit a known child molester." According to Stewart, Hargis then looked up, saw Stewart's daughter, and "comment[ed] that he will molest my daughter right in front of me and torch my house if I do not tell him." Stewart, fearing for his family's safety, told his wife and daughter to go inside and told Hargis that he needed to leave or he would shoot him. Stewart claimed that Hargis refused to leave; instead, he pulled a tiki torch canister from one pocket and reached into another pocket. In order to get his son away from the situation, Stewart told him to go inside to get his gun. Stewart attempted to "talk [Hargis] down" while Hargis continued to talk about government conspiracies. Stewart was eventually able to get Hargis away from the house and Hargis disappeared down the street.

Stewart called 911 to report the incident. Stewart's wife was able to identify Hargis as the individual who had been on their property. Officer Thompson later located Hargis and placed him under arrest. During a search incident to arrest, Thompson collected four tiki torch canisters from Hargis' pockets. Stewart later reported finding a deck of cards, a notebook, and a marker on his back porch that he believed had been placed there by Hargis.

Prior to trial, Hargis filed a motion in limine requesting that the State be precluded from introducing certain evidence at trial. The district court addressed the motion at a hearing just prior to the start of trial. Defense counsel also expressed an additional concern, not raised in the motion, about "uncharged offenses," referencing Hargis' alleged statement referring to himself as a pedophile and his alleged threat to molest Stewart's daughter. Defense counsel asked for a ruling prohibiting the introduction of this evidence as prejudicial to Hargis. In response, the prosecutor noted that the statements at issue were contemporaneous to the threat to torch Stewart's house. The district court reasoned

that these contemporaneous statements could each support the criminal threat charge and concluded that if the State elected to rely on both, it would provide the jury with a unanimity instruction.

The case then proceeded to a jury trial. Hargis did not object to Stewart's testimony that Hargis referred to himself as a "known child molester" or that Hargis threatened to molest Stewart's daughter. Hargis also offered no objection when the prosecutor questioned Officer Thompson about these statements.

Hargis testified on his own behalf. Hargis stated he had a prior sexual relationship with Courtney and she had told him he was the father of her daughter. Hargis stated that on August 30, 2015, he walked across Wichita with a cross and a red robe and had red ink smeared across his face to resemble the blood of Jesus. Hargis decided to look for Courtney at her last known address so he could meet his daughter. Hargis claimed Stewart was aggressive and yelled at him to get off the property, so he went out onto the street and spoke to Stewart about abolishing electronic laws, the use of nanotechnology for subliminal advertising, and homemade earplugs he made for Kya. Hargis denied that he threatened to torch Stewart's house or molest Stewart's daughter and stated he never intended to make Stewart fear for his life. Hargis also denied he had any tiki torch canisters with him at Stewart's house. Hargis stated that earlier that day, he went to K-Mart to purchase poster board and supplies to make a cross. Hargis claimed that before he went to Stewart's house, he placed the supplies, including tiki torch canisters, underneath a bus stop bench. Hargis admitted to leaving some items for Kya on Stewart's back porch.

During the jury instruction conference, the prosecutor advised the State was electing to rely solely on the threat to torch Stewart's house as the criminal act at issue. Because the State was not arguing any alternative theories, the district court found it unnecessary to provide the jury with a unanimity instruction. During closing argument,

4

the State specifically asked the jury to find Hargis guilty of criminal threat based on the threat to torch Stewart's house.

The jury convicted Hargis as charged. The district court sentenced Hargis to 16 months in prison, with a postrelease supervision term of 12 months. Hargis timely appeals.

*The Motion in Limine*

Hargis argues the district court erred in denying his motion in limine to exclude evidence he threatened to molest Stewart's daughter. He claims the evidence should have been excluded under K.S.A. 2016 Supp. 60-455 because its prejudicial effect outweighed its probative value. The State responds Hargis' failure to contemporaneously object to the admission of the evidence at trial precludes this court from reaching the merits of his argument. The State alternatively alleges the evidence was admissible independent of K.S.A. 2016 Supp. 60-455.

K.S.A. 60-404 requires that when the district court denies a motion in limine and that evidence is later introduced at trial, the moving party must make a timely and specific objection at trial to the admission of the evidence in order to preserve the issue for appeal. *State v. Sprague*, 303 Kan. 418, 432-33, 362 P.3d 828 (2015). Hargis objected at the pretrial hearing to the admission of his alleged threats to molest Stewart's daughter, but Hargis did not renew his objection at any point when the evidence was introduced or referenced at trial.

Hargis concedes he did not object to the admission of the statements at issue when they were introduced at trial but claims that a contemporaneous objection was not required under the circumstances present here. Given the discussion at the pretrial hearing, Hargis asserts that defense counsel would have understood the State was relying

5

on both the alleged threat to molest Stewart's daughter and the alleged threat to torch Stewart's house to prove its case. Only later, when the State elected to proceed solely on the threat to torch Stewart's house, would defense counsel be aware that the molestation threat may constitute other crimes evidence under K.S.A. 2016 Supp. 60-455.

In *State v. King*, 288 Kan. 333, 349, 204 P.3d 585 (2009), our Supreme Court held that the practice of reviewing evidentiary questions when no objection has been lodged runs contrary to the legislature's clearly stated intent in K.S.A. 60-404:

> "K.S.A. 60-404 dictates that evidentiary errors shall not be reviewed on appeal unless a party has lodged a timely and specific objection to the alleged error at trial. Although our past decisions may have relaxed the objection requirement in the evidentiary context, this practice not only has led to confusion as to the standards that should be applied on appeal, but also has de-emphasized the role of counsel at trial and has impaired the gate-keeping function of district courts in this state. . . .
>
> ". . . From today forward, in accordance with the plain language of K.S.A. 60-404, evidentiary claims . . . must be preserved by way of a contemporaneous objection for those claims to be reviewed on appeal."

Because Hargis failed to make a timely objection to the admission of the evidence of his threat to molest Stewart's daughter, appellate review of the merits of Hargis' claim would be foreclosed under the contemporaneous objection rule set forth in K.S.A. 60-404.

Even if we were to accept Hargis' claim that a contemporaneous objection was not required, he would still not be entitled to relief under K.S.A. 2016 Supp. 60-455. The statute generally precludes evidence that a person has committed a crime or civil wrong on a particular occasion to prove the person's propensity to commit the charged crime. Notably, K.S.A. 2016 Supp. 60-455 applies to evidence "'the person committed another crime or civil wrong on *another* specified occasion.' . . . Hence, by its plain language, K.S.A. 60-455 does not apply to a circumstance involving the *same* occurrence." *State v.*

6

*Adams*, 294 Kan. 171, 184, 273 P.3d 718 (2012); see *State v. Berney*, 51 Kan. App. 2d 719, 722, 353 P.3d 1165 (2015) (noting that 60-455 regulates evidence that person has "committed a crime on *some other occasion*" [Emphasis added.]).

Hargis' threat to molest Stewart's daughter and his threat to torch Stewart's house were made contemporaneously, during the same ongoing altercation between Hargis and Stewart. Hargis did not make the statement about molesting Stewart's daughter on some other occasion. This evidence was not admitted to prove, nor did it show, that Hargis had a propensity to commit a crime; rather, it was admitted as evidence of Hargis' behavior during his altercation with Stewart. Thus, the statement was admissible without regard to K.S.A. 2016 Supp. 60-455.

Affirmed.